USA v. Rock                          CR-92-60-D      11/24/92

UNITED STATES DISTRICT COURT FOR THE

                      DISTRICT OF NEW HAMPSHIRE


United States of America


     v.                              Criminal No. 92-00060-01-D


Jeffrey Rock


                         O R D E R


     Defendant Jeffrey Rock has been charged with being a felon
in possession of a firearm, 18 U.S.C. § 922(g), possession of a
firearm during a drug trafficking crime, 18 U.S.C. § 924(c), and
possession of marijuana with intent to distribute, 21 U.S.C.
§ 841(a)(1).  The court held a hearing on November 23, 1992, on
defendant's motion to suppress.


                          FACTS

     On June 14, 1992, Officer Vynorius of the Newton Police
Department stopped Rock for speeding and a yellow line violation.
After determining that Rock's New Hampshire driver's license had
been revoked, Officer Vynorius arrested Rock for driving after
revocation and placed him in a police cruiser at the scene.
Officer Vynorius then returned to Rock's vehicle to determine
whether one of Rock's two passengers could take the vehicle home.
While he was standing at the driver's side of the vehicle,
Officer Vynorius observed what appeared to him to be a partially

burned marijuana cigarette on the lip of the ashtray. He also observed approximately three inches of a clear plastic baggie jammed between the seat cushions of the front seat. After making these observations, Officer Vynorius instructed the two passengers to leave the vehicle. When the passenger in the back seat pushed the back of the front seat forward to exit the vehicle, Officer Vynorius saw that the rest of the baggie contained a green vegetative substance he believed to be marijuana. Shortly thereafter, Officer Vynorius seized the cigarette and the baggie containing the vegetative matter during a search of the passenger compartment. When the search was completed, the vehicle was towed to Estabrook's Garage where it was impounded until a search warrant could be obtained for the trunk.

Officer Vynorius obtained a warrant for the trunk the next day. He was assisted in the search by Lieutenant LaBell. Two more baggies of marijuana and other items were seized during the search of the trunk. During this search, both Officer Vynorius and Lieutenant LaBell heard someone releasing the hood of the vehicle. Approximately three minutes later, Roland Estabrook, a co-owner of the garage, came around the vehicle with an open plastic bag containing an object covered with a red rag. Estabrook offered the bag to Lieutenant LaBell, who removed the object and determined that it was a pistol. All witnesses testified that Estabrook was not asked to participate in the police search. Officer Vynorius and Lieutenant LaBell both

-2-

testified that they were not aware that Estabrook was inspecting the engine compartment until he emerged with the bag. Estabrook testified that he discovered the bag while inspecting the engine compartment to determine whether the battery cables had to be disconnected. He claimed that it was a common practice to make such inspections of impounded vehicles.

## DISCUSSION

Rock contends that all evidence arising from the search and seizure of his vehicle should be suppressed because the police lacked probable cause to search his vehicle and because Eastabrook was working in concert with the police in their search of the impounded vehicle, violating Rock's Fourth Amendment protection against unlawful search and seizure. Rock also contends that a statement he gave to a government agent approximately two months after his arrest should be suppressed because it was tainted by the illegal search of his vehicle. The court does not find these arguments persuasive.

## THE PASSENGER COMPARTMENT SEARCH

When the police make a lawful arrest of the occupant of an automobile they may as a contemporaneous incident of that arrest, search the passenger compartment of the automobile including the contents of any containers found within the passenger compartment. New York v. Belton, 453 U.S. 454, 460 (1980). Thus, since the validity of Rock's arrest for driving with a

revoked license is uncontested, the warrantless search of Rock's passenger compartment at the time of his arrest was lawful under federal law whether or not probable cause existed to conduct the search. The fact that Rock was in the police cruiser at the time of the search is irrelevant because the case law has drawn a bright line defining the scope of an automobile search incident to an arrest as including the passenger compartment of the vehicle, even if the passenger compartment is no longer within the reach of the arrestee at the time of the search. New York v. Belton, 453 U.S. 454, 462 (1980) (upholding a passenger compartment search incident to arrest even though the arrestee had been removed from the vehicle prior to the search); United States v. White, 871 F.2d 41, 44 (6th Cir. 1989); United States v. Karlin, 852 F.2d 968, 970-71 (7th Cir. 1988).

Alternatively, when a police officer legitimately stops an automobile and has probable cause to believe that contraband is concealed somewhere within it, he may conduct a warrantless search of the entire vehicle, including the trunk and any containers found within the vehicle, whether or not he arrests an occupant of the vehicle. California v. Acevedo, 111 S. Ct. 1982, 1985 (1991); United States v. Ross, 456 U.S. 798, 800 (1982). Thus, if Officer Vynorius had probable cause to believe that contraband could be found in Rock's vehicle, he was justified in making a warrantless search of the passenger compartment.

Rock contends that the passenger compartment search was improper because Officer Vynorius lacked a sufficient basis for

his conclusion that the cigarette in the ashtray and the baggie concealed between the cushions of the front seat contained marijuana. The facts do not support this contention. Officer Vynorius had substantial training and experience in the detection and identification of marijuana. He had participated in more than 100 drug arrests. Accordingly, he had a basis in his prior experience for his opinion that the cigarette and the baggie contained marijuana. See, e.g., United States v. Ortiz, 422 U.S. 891, 895 (1975); United States v. Soule, 908 F.2d 1032, 1040 (1st Cir. 1990). Although Officer Vynorius admitted that he could not from a distance distinguish a hand-rolled tobacco cigarette from a marijuana cigarette, he did not need to rely on his observations of the cigarette alone to justify his search. He also saw the clear plastic baggie containing approximately 25 grams of a green vegetative substance hidden between the seat cushions of the front seat. Officer Vynorius' observations, coupled with his training and experience, were sufficient to support the Government's contention that Officer Vynorius had probable cause to search the passenger compartment. Accordingly, the passenger compartment search was justifiable on the alternative ground that it was an automobile search supported by probable cause.

THE TRUNK SEARCH

Rock argues that the police lacked probable cause to search his trunk even if they had probable cause to search the passenger compartment. In support of this contention, he cites several

cases which the court does not find persuasive. The incriminating evidence in each case cited by the defendant was limited to paraphernalia alone or very small quantities of controlled substances. The court concludes that where, as in the present case, a significant quantity of a substance which appears to be marijuana is found in two locations within the passenger compartment of a vehicle, the police have probable cause to search the entire vehicle. See, e.g., United States v. Burnett, 791 F.2d 64, 67 (6th Cir. 1986) (2 ounces of marijuana in the passenger compartment gives rise to probable cause to search the trunk); United States v. Loucks, 806 F.2d 208, 210 (10th Cir. 1986) (odor of marijuana in passenger compartment gives rise to probable cause to search the entire vehicle). The court thus finds no defect in the warrant Officer Vynorius obtained to search Rock's trunk.


THE ENGINE COMPARTMENT INSPECTION

Rock contends that Estabrook's inspection of the engine compartment was improper because the inspection exceeded the scope of the warrant and Estabrook was acting as a government agent when the inspection was undertaken.

It is well established that the Fourth Amendment is inapplicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109,

-6-

113 (1984) (quoting <u>Walter v. United States</u>, 447 U.S. 649, 662 (1980) (Blackmun, J. dissenting)).  Thus, the issue before the court is whether Estabrook was acting as a government agent when he inspected the engine compartment or whether he conducted the inspection with the knowledge or acquiescence of the Government.

At the outset, the court rejects Rock's claim that Estabrook's inspection of the engine compartment was a pretext designed to give the police access to a portion of the vehicle that they could not lawfully search themselves.  All three witnesses who testified at the suppression hearing stated that Estabrook inspected the engine compartment on his own initiative.  Officer Vynorius and Lieutenant LaBell testified that although they heard the hood of the vehicle being opened while they were at the rear of the vehicle engaged in the trunk search, they were not aware of Estabrook's activities until he emerged from the front of the vehicle with the bag containing the pistol.  Estabrook testified that he decided on his own to make the inspection because he commonly inspected the wiring of older impounded vehicles such as Rock's to determine whether the battery cables should be disconnected to eliminate a potential fire hazard.  The court finds this uncontradicted testimony persuasive and concludes that Estabrook acted entirely on his own when he decided to inspect the engine compartment.  Accordingly, Estabrook was not acting with the knowledge, encouragement or acquiescence of the Government when he made his inspection of the engine compartment.

The court also rejects Rock's claims that Estabrook's ties to law enforcement made him a government agent when he inspected the engine compartment. Although Estabrook had served as Newton's police chief in the 1970s, he had not been employed by the police department for nearly 20 years. Such a remote connection to the police department cannot support Rock's agency argument. Similarly, although Estabrook serves as a Special Deputy Rockingham County Sheriff on a part-time fee for services basis, his duties as a special deputy do not include any crime prevention or detection functions. Moreover, his occasional service as a part-time special deputy is wholly unconnected with his duties as a co-owner of Estabrook's Garage. Accordingly, it has no bearing on whether Estabrook was acting as a government agent when he inspected Rock's engine compartment. See, e.g., State v. Walker, 236 Neb. 155, 159, 459 N.W. 2d 527, 531 (Neb. 1990) (holding that a search by a landlord of a tenant's house was not a governmental act even though the landlord was also a police officer because the search was conducted for a private purpose).

The mere fact that the Newton police routinely called Estabrook's Garage to tow and store their impounded vehicles did not transform Estabrook's engine compartment inspection into a governmental act. Estabrook's Garage was paid for its services by the owners of the impounded vehicles, not the police. Moreover, employees at Estabrook's Garage were used only to tow and store impounded vehicles, not to search such vehicles.

-8-

Accordingly, the court rejects Rock's agency claim. See, e.g., Cash v. Williams, 455 F.2d 1227, 1230 (6th Cir. 1972); United States v. Sellers, 511 F.2d 1199, 1200 (4th Cir. 1975).

Finally, while Estabrook's decision to inspect the engine compartment coincided with the police search of the trunk of the vehicle, the court finds that the two activities were separate and occurred only coincidentally at the same time. Accordingly, there was insufficient governmental involvement in Estabrook's engine compartment inspection to bring Estabrook's actions within the purview of the Fourth Amendment.

Although the court finds that Estabrook was acting as a private party not subject to the Fourth Amendment when he discovered the pistol, the court would not suppress the pistol even if Estabrook had been acting as a government agent. The court has found that the police had probable cause to conduct a lawful warrantless contraband search of the entire vehicle and any containers in the vehicle under Ross and Acevedo. The authority to conduct such a search did not lapse because of the impoundment of the vehicle overnight at Estabrook's Garage. United States v. Johns, 469 U.S. 478, 486-87 (1985). Accordingly, the warrantless engine compartment search and the seizure of the pistol as evidence of a crime would have been justified even if Estabrook had been acting as a police agent when he discovered the pistol.

<u>THE SEPTEMBER 3, 1992 STATEMENTS</u>

Rock contends that certain statements he gave to an Alcohol, Tobacco and Firearms agent on September 3, 1992 should be suppressed because they were tainted by the allegedly illegal searches of Rock's vehicle.  Because the court finds no illegality in these searches, the defendant's argument is unavailing.


<u>CONCLUSION</u>

For the reasons set forth herein, Rock's motion to suppress (document no. 14) is denied.

**SO ORDERED.**


_____
Paul Barbadoro
United States District Judge

November 24, 1992

cc:   United States Attorney
      United States Probation
      United States Marshal
      Marc Chretian, Esq.